# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ANTHONY DORAME,**

    **Plaintiff,**

vs.                                                                                                            Civ. No. 01-0328 MV/RLP

**JO ANNE B. BARNHART,**
**Commissioner of the Social**
**Security Administration,**

    **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

### I. Issue Presented

1. Plaintiff, Anthony Dorame ("Plaintiff" herein), filed applications for Disability Insurance Benefits and Supplemental Security Income on November 2, 1995. The Commissioner of Social Security, through an Administrative Law Judge, found that he was not eligible for DIB, and further found that his disability commenced as of his 55th birthday, April 20, 1998, but not before. Plaintiff currently receives disability benefits from the Veterans' Administration in an amount which disqualifies him from receipt of SSI benefits. Plaintiff contends that the ALJ erred in determining the date on onset of disability, and seeks an award of SSI as of November 2, 1995, through the date he was awarded Veterans' benefits[2].

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] Plaintiff was receiving a service connected disability benefit of $89 per month when he filed his application for SSI. (Tr. 25-26). By March 22, 2001, this benefit had been increased to $775 per month. (Application to Proceed IFP, Docket No. 2). The date this increase took effect is not indicated in the

2. Plaintiff has numerous impairments. The ALJ found that chronic low back pain, right shoulder degenerative joint disease, unstable angina and hypertension were severe, and limited Plaintiff to light exertional work. She found that reactive depression, hepatitis C and glaucoma did not have more than a minimal effect on his ability to work for any continuous twelve month period, and therefor were not severe. Based on his residual functional capacity, the ALJ found that Plaintiff could not perform his past relevant work. She applied the Medical Vocational Guidelines ("grids"), and determined that Plaintiff was disabled as of April 20, 1998, his fifty-fifth birthday.[3]

3. Plaintiff contends that the ALJ erred at step two of the sequential evaluation process because his impairments of hepatitis C and depression meet the *de minimis* standard for severe impairments. He seeks reversal and remand in order that the Commissioner may consider further the effect of hepatitis C and mental problems on his residual functional capacity.

## II. Standard of Review

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ fails to apply correct legal standard in evaluating a claim. Thompson, 987 F.2d at 1487. (citation omitted).

5. Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401-402 (1971); Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). The Court's duty to assess whether

---

administrative record or pleadings.

[3]Compare 20 C.F.R. Pt 404, Subpt. P, App. 2, Rule 202.06 with Rule 202.14.

substantial evidence exists "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence - particularly certain type of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.' " Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988) (quoting Fulton v. Heckler,760 F.2d 1052, 1055 (10th Cir. 1985)). The Court is not to reweigh the evidence or substitute its judgment for the Commissioner's. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court typically defers to the ALJ on issues of witness credibility. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1498 (10th Cir. 1992). The record will be examined as a whole, including whatever fairly detracts from the weight of the Commissioner's decision, to determine whether the substantiality of the evidence test has been met. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 978 F.2d. at 1486 (citing 42 U.S.C. §423(d)(1)(A)). To determine disability, the Commissioner has established a five step sequential evaluation process. Id. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

7. At the second step of the sequential evaluation process, the claimant must show that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities. An impairment is not severe if it is only a slight abnormality with a minimal effect of the ability to work. Soc. Sec. Ruling 85-28. Medical evidence alone is evaluated at step two. Id. If the evidence is unclear as to whether the impairment is severe, the sequential evaluation process is nevertheless continued. Id. At step two, "the claimant must make a threshold showing that his

medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities...." Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). While this has been characterized as a "de minimis" showing, see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997), the mere presence of a condition or ailment documented in the record is not sufficient to prove that the plaintiff is significantly limited in the ability to do basic work activities, see Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir.1997).

### III.  Medical evidence

#### A.  Hepatitis C

8. Plaintiff began seeking routine medical care through the Veterans' Administration in August 1995. At the time, he had complaints of left shoulder pain, glaucoma of his right eye and rapid heart rate. (Tr. 99). Laboratory studies disclosed abnormal liver function, and Hepatitis C was confirmed as of October 1995. (Tr. 102, 122-123, 107,124, 114). At that time, however, he had no complaints associated with hepatitis, had only rare abdominal discomfort, no bowel or bladder symptoms, and no abdominal mass.[4] (Tr. 114). Plaintiff's next medical evaluation took place on January 5, 1996, when he indicated that his doctor had told him he had a liver problem and wanted more blood drawn. (Tr. 118). He was described as "asymptomatic" in relation to his liver problem, and was referred to the gastrointerology department for possible treatment with Interferon. (Tr. 118-119,157). That evaluation occurred on February 20, 1996. (Tr. 159-160). Plaintiff gave a history of tiring easily. On clinical examination he was not jaundiced and his abdomen was not distended or tender. Use of Interferon was not recommended because of its low success rate and high rate of complications.

---

[4]Hepatitis C may cause no symptoms. If symptoms occur, they can include jaundice, abdominal pain, fatigue, loss of appetite, nausea and vomiting, low grade fever, pale or clay colored stool, dark urine, and generalized itching. http://www.nlm.nih.gov/medlineplus/ency/article/000284.htm#symptoms.

4

Instead, future management was to be by repeat liver function studies, with additional evaluation if those values increased.

9. Donald Draney, M.D., an internist, examined Plaintiff on February 27, 1997, at the request of the Disability Determination Unit. (Tr. 143-147, 152). Dr. Draney recorded that Plaintiff was his usual weight of 160 lbs., and that he did not feel acutely ill. He complained of decreased vision in his right eye, an incident of chest pain and syncope in 1995 with no obvious angina at present, pain in his right shoulder, and back pain. Clinical examination of his abdomen was negative. Dr. Draney indicated in part that Plaintiff had "Chronic hepatitis C by history, without physical stigmata of chronic liver disease." (Tr. 145).

10. On May 27, 1997, Plaintiff was evaluated at the VA, complaining of "continuous pain over liver area." Although the remainder of the treatment note is difficult to read, it appears that the only treatment prescribed related to diet. (Tr. 230). At an examination at the VA one year later Plaintiff was described as looking good, with no stigmata of chronic liver disease. (Tr. 227).

### B. Depression

11. Plaintiff was treated for depression in 1994, prior to the date relevant to this appeal. He attended counseling sessions and was treated with Prozac which "helped quite a bit". (Tr. 126, 73). He stopped taking Prozac because he couldn't afford it, and also because he felt it changed his personality, making him more irritable. (Tr. 184).

12. In his application for SSI benefits, Plaintiff complained of periods of depression which prevented him from concentrating. (Tr. 52). On February 27, 1997, Plaintiff discussed his 1994 episode of depression with Dr. Draney (Tr. 144), who assessed Plaintiff as currently suffering from reactive depression. In a telephone conversation with social security administration personnel on

5

March 3, 1997, Plaintiff stated that he was depressed and had trouble sleeping. On May 28 1997, he was referred to the psychiatry department at the Veterans' Administration Hospital, due to his complaints of "sleeplessness, restlessness, unable to concentrate, ideas of suicide. . ." (Tr. 225). The chart indicates that Plaintiff was seen the following day, however records of that visit are not in the administrative file.

13.     Plaintiff was evaluated by Michael Hickey, M.D., a psychiatrist, in February 1998, at the request of the Disability Determination Unit. (Tr. 184-186).  He complained of loss of appetite, weight loss, inability to concentrate, loss of interest in activities, social isolation, frustration, irritability and thoughts of suicide. On mental status exam, Plaintiff was described as alert, oriented, pleasant and cooperative. He spoke softly with psychomotor slowing. His physical appearance was that of an extremely sad and tired individual. He was oriented to time, place, person and situation, but had some difficulties with short term recall, and his concentration abilities were deficient on protocol testing. Based on this exam and his interview, Dr. Hickey diagnosed Major depression[5], chronic. Dr. Hickey referred Plaintiff to a local counseling center if he could get no assistance for depression at the VA.

14.     Plaintiff was seen by Floyd Thomas M.D. at Presbyterian Medical Services on March 17, 1998. (Tr. 219). Plaintiff indicated that he had been referred by Dr. Hickey in order to obtain a prescription for Prozac, and for "mild depressive symptoms with insomnia.". Id. Dr. Thomas described Plaintiff as exhibiting depressed mood and slow speech. He diagnosed depression and

---

[5]According to Dorland's Illustrated Medical Dictionary, 445 (28th ed.1995), major depression is "a mental disorder characterized by the occurrence of one or more major depressive episodes (q.v.) and the absence of any history of manic or hypomanic episodes."

prescribed Prozac. He also recommended counseling at a center that offered its services on a sliding scale basis.

15. Plaintiff was evaluated in the infectious disease department of the VA Clinic in May 1998. (Tr. 226-230). The following notations relevant to his mental state were made:

> Depression    1993 - Alamogordo (psychiatric) - Prozac x sev. months
>                       1998 - Resumed Prozac (approx) March 1998
>                              (no) sleep, (decreased) appetite, depression
>                              had thoughts of suicide
>                              (no) plan, (no) gesture
>                              now sleeping better
>                              anorexia sl. better.
>                              Last suicide thought (about) 12/97
>                                        * * *
>                              Exam Looks good mood/affect wnl

### IV. The ALJ's Opinion

16. The ALJ found that Plaintiff's Hepatitis C was non-severe because it was completely asymptomatic, citing to the January 5, 1996, evaluation through the VA and Dr. Draney's February 27, 1997, consultative exam. (Tr. 13, 118, 143-145). The medical evidence relied upon by the ALJ, as well as the May 1997 and May 1998 evaluations at the VA provide substantial evidence supporting the ALJ's decision.

17. The ALJ found that Plaintiff "had failed to establish that he has a mental or emotional impairment which had more than a minimal effect on his ability to work for any continuous 12 month period at issue," and that his reactive depression was non-severe because it "caused slight limitations in his social functioning and slight decrease in his concentration."[6] (Tr. 13). If the ALJ's

---

[6] In the Psychiatric Review Technique Form appended to his decision, the ALJ also found that Plaintiff's mental condition did not restrict his activities of daily living, and that he had suffered no episodes of deterioration in work or work-like settings. (Tr. 17-18)

findings are supported by substantial evidence, the ALJ correctly determined that Plaintiff's mental impairments were not "severe." 20 C.F.R. §416.920a(c)(1).[7] If, however, substantial evidence does not support a minimal level of functional impairment on any one of the criteria, the mental impairment must be considered severe, that is, more than minimal, at step two of the sequential evaluation process.

18.   The ALJ relied on two records for finding that Plaintiff's mental condition was not severe: (1) Dr. Hickey's February 27, 1998, evaluation (Tr. 184-186), stating that Dr. Hickey had classified plaintiff's depression as mild and therefore it would not further limit his ability to engage in light work (Tr. 14), and (2) the May 28, 1998, notation in the VA infectious disease department records that Plaintiff's depression had improved with medication. (Tr. 227). Dr. Hickey did not rate the severity of Plaintiff's depression. The adjective "mild" was used by Dr. Thomas in stating the reason for Plaintiff's referral to him. Dr. Thomas did not include any rating of the severity of Plaintiff's depression in recording his diagnosis, and noted that Plaintiff exhibited depressed mood and slow speech but no hallucinations, delusions or suicidal ideation. (Tr. 219). In terms of functional mental impairment Dr. Hickey stated that Plaintiff had "some difficulty" with short term recall and that his concentration abilities were "deficient." (Tr. 185). The notation by the VA infectious department indicated that after initiating use of Prozac two months earlier, Plaintiff had a lessening in some symptoms of depression - insomnia, loss of appetite and thoughts of suicide, and that his mood and affect were within normal limits. (Tr. 226).

20.   Based on the entire record, I find that substantial evidence does not support the ALJ's

---

[7]"If the four areas considered by us as essential to work have been rated to indicate a degree of limitation as "none" or "slight" in the first and second areas, "never" or "seldom" in the third area, and "never" in the fourth area, we can generally conclude that the impairment is not severe. . ."

determination at step two of the sequential evaluation process that Plaintiff's depression was not "severe." Dr. Hickey's evaluation establishes that Plaintiff's depression did affect his ability to concentrate to an extent sufficient to satisfy the "de minimis" standard applicable at step two of the sequential evaluation process. The observation by the physician at the VA Clinic following initiation of antidepressant medication does not address Plaintiff's ability to concentrate, and therefore does not provide substantial evidence that his concentration abilities were not longer impaired.

### V. Recommendation

21. For the reasons stated above, I recommend that Plaintiff's Motion to Reverse to granted in part, and that this cause be remanded to the Commissioner for additional proceedings. The Commissioner shall consider Plaintiff's mental impairment at all steps of the sequential evaluation process.

_____
RICHARD L. PUGLISI
United States Magistrate Judge